**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CALLEN DEMPSTER** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-6158** |
| **LAMORAK INSURANCE CO., et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiff Callen L. Dempster ("Plaintiff") alleges that he suffered exposure to asbestos and asbestos-containing products that were designed, manufactured, sold, and/or supplied by a number of Defendant companies while Plaintiff was employed by Defendant Avondale Industries, Inc. ("Avondale").[1] After Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company removed the suit from state court under the federal officer removal statute, Plaintiff filed the pending Motion to Remand.[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion and remand this case to the Civil District Court for the Parish of Orleans, State of Louisiana.

---

[1] Rec. Doc. 1-2 at 2. In particular, Plaintiff brought claims in his Petition against Lamorak Insurance Company, Huntington Ingalls Inc., Albert Bossier, Jr., J. Melton Garrett, Eagle, Inc., Bayer Cropscience, Inc., Foster-Wheeler LLC, General Electric Co., Hopeman Brothers, Inc., McCarty Corporation, Taylor-Seidenbach, Inc., CBS Corporation, Uniroyal, Inc., International Paper Co., Houston General Insurance Company, Berkshire Hathaway Specialty Insurance Company, Northwest Insurance Company, United Stated Fidelity and Guaranty Company, Fist State Insurance Company, The American Insurance Company, Louisiana Insurance Guaranty Association, and the Traveler's Indemnity Company. *Id.* at 1–2.

[2] Rec. Doc. 4.

# I. Background

## A.    *Factual Background*

In this litigation, Plaintiff alleges that he was employed by Avondale from 1962 to 1994.[3] During that time, Plaintiff avers that he was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Plaintiff breathing in asbestos fibers and later developing asbestos-related cancer.[4] Plaintiff asserts strict liability and negligence claims against various Defendants.[5] Specifically, Plaintiff alleges that:

> All asbestos companies had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of [Plaintiff] and for which these defendants are liable under Louisiana law. However, with regard to Avondale and its executive officers, they are liable because they failed to properly handle and control the asbestos which was in their care, custody, and control. Petitioners are not alleging that Avondale and its executive officers are liable for the mere use of asbestos; rather, Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.[6]

## B.    *Procedural Background*

Plaintiff filed a "Petition for Damages" in the Civil District Court for the Parish of Orleans, State of Louisiana, on March 14, 2018.[7] Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company (the "Avondale Interests")

---

[3] Rec. Doc. 1-2 at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 6–7.

[7] *Id.* at 1.

removed the case to this Court on June 21, 2018.[8] Avondale Interests allege that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[9] In particular, Avondale Interests contend that Plaintiff stated during his deposition on April 23, 2018, that he worked on Navy Destroyer Escorts while he was employed at Avondale.[10] According to the Avondale Interests, Leroy Rome ("Mr. Rome"), who was also employed by Avondale during the entire time that Plaintiff was employed there, swore in an affidavit that "he and other insulators were 'exposed to asbestos by working with or around asbestos-containing materials while working on DE vessels,' that he knew that [Plaintiff] worked on the same DEs that he did because 'I [Rome] would leave instructions for the night crew, which included [Plaintiff],' and that the duties of Avondale insulators included work with asbestos-containing products."[11]

Avondale Interests argue that they are either corporations or individuals and therefore are "persons" within the meaning of 28 U.S.C. § 1442(a)(1).[12] Avondale Interests further assert that Plaintiff worked on the Navy Destroyer Escorts pursuant to contracts between Avondale and the United States government.[13] Moreover, Avondale Interests aver that the use of the asbestos-containing materials, from which Plaintiff's causes of action arise, was required by the contractual provisions and design specifications mandated by the Federal Government, and that the Federal

---

[8] Rec. Doc. 1 at 2.

[9] *Id.*

[10] *Id.* at 2–3.

[11] *Id.* at 4 (citing Rome Affidavit, at ¶3).

[12] *Id.* at 5 (citing *Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016)).

[13] *Id.*

Government oversaw the construction process to ensure compliance.[14] Therefore, Avondale Interests contend that they were "acting under" an "officer . . . of the United States or [an] agency thereof" within the meaning of Section 1442(a)(1), as it was performing a task that the Federal Government would otherwise have had to perform, *i.e.* building ships "used to help conduct a war" and "to further other national interests."[15]

Additionally, Avondale Interests assert "two colorable federal defenses" to Plaintiff's claims in the Notice of Removal: (1) that Plaintiff's claims are barred under the doctrine of government contractor immunity established by the Supreme Court in *Boyle v. United Technologies Corporation*; and (2) that Plaintiff's claims are preempted and barred by the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[16]

On June 22, 2018, Plaintiff filed the instant Motion to Remand.[17] On July 2, 2017, Defendant Foster Wheeler, LLC ("Foster") filed a Motion to Join the Avondale Interests' Notice of Removal,[18] which the Court granted.[19] On July 3, 2018 Foster filed an opposition to the Motion to Remand on July 3, 2018.[20] On July 5, 2018, the Avondale Interests also filed an opposition to the Motion to Remand.[21]

---

[14] *Id.* at 4–5.

[15] *Id.* at 5 (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153–54 (2007); *Savoie,* 817 F.3d at 461–62).

[16] *Id.* at 6 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988); 33 U.S.C. § 901).

[17] Rec. Doc. 4. Plaintiff also filed a motion to expedite the motion to remand, which the Court granted on June 25, 2018. Rec. Docs. 5 and 6.

[18] Rec. Doc. 9.

[19] Rec. Doc. 19.

[20] Rec. Doc. 12.

[21] Rec. Doc. 21.

With leave of Court, Plaintiff filed a reply brief in further support of the Motion to Remand on July 12, 2018.[22] With leave of Court, Foster filed a sur-reply in support of opposition to the Motion to Remand on July 16, 2018.[23] With leave of Court, Plaintiff filed a reply memorandum in further support of the Motion to Remand on July 30, 2018.[24] With leave of Court, Plaintiff filed a Supplemental Memorandum in Support of the Motion to Remand on 85.[25] With leave of Court, Defendants filed a Supplemental Opposition to the Motion to Remand on 86.[26]

## II. Parties' Arguments

### A.    *Plaintiff's Motion to Remand*

In the instant motion,[27] Plaintiff argues that remand of this case is proper, as: (1) Avondale Interests' removal was untimely; (2) there is no evidence that Plaintiff was exposed to asbestos on a federal vessel; (3) the Fifth Circuit has consistently held that negligence claims do not warrant federal officer removal; (4) Avondale Interests were not "acting under" the direction of a federal officer; (5) Avondale Interests have not established a colorable federal contractor defense; and (6) Avondale Interests' LHWCA defense does not provide an independent basis for removal, and, regardless, the LHWCA supplements state law remedies rather than supplanting them.[28]

---

[22] Rec. Doc. 35.

[23] Rec. Doc. 39.

[24] Rec. Doc. 48.

[25] Rec. Doc. 85.

[26] Rec. Doc. 86.

[27] Rec. Doc. 4.

[28] Rec. Doc. 4-1 at 4–25.

### 1. *Timeliness*

Plaintiff first argues that Avondale Interests' Notice of Removal is untimely.[29] Plaintiff contends that Avondale Interests' basis for removal is that Plaintiff worked aboard Destroyer Escorts built by the United States Navy, which Plaintiff revealed in his April 23, 2018, deposition.[30] Plaintiff asserts that removal is untimely because Avondale Interests did not remove the case until two months after the deposition, longer than the 30 days to file a notice of removal allowed under 28 U.S.C. § 1446.[31]

### 2. *No Federal Interest*

Next, Plaintiff asserts that the Motion to Remand should be granted because Avondale Interests have failed to show that Plaintiff was exposed to asbestos on a government vessel, and thus "no federal interest is implicated."[32] Plaintiff asserts that he only worked for a short time on government ships and only worked with rubber piping and fiberglass, never coming into contact with asbestos.[33] Further, Plaintiff asserts that Mr. Rome, his coworker whose testimony is cited by Avondale Interests, did not have personal knowledge of the type of material Plaintiff used on these ships because Mr. Rome worked the day shift, while Plaintiff worked the night shift.[34]

---

[29] *Id.* at 4.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 4–5.

### 3. Negligence Claims

Plaintiff argues that Avondale Interests' claims do not warrant removal because the claims against Avondale Interests are specifically based on negligence, not strict liability.[35] Plaintiff highlights that his claims do not rely on Avondale Interests' possession of asbestos, rather the claims rely on Avondale Interests' improper handling of asbestos.[36]

Plaintiff alleges that the "Fifth Circuit has routinely rejected assertions that…negligent acts form the basis for federal officer removal."[37] Plaintiff cites multiple cases where the Fifth Circuit remanded similar claims, some of which also involved Avondale as a defendant.[38] Plaintiff also highlights that this Court has remanded similar claims against Avondale, including in *Templet v. Huntington Ingalls, Inc.*, a case that was subsequently affirmed by the Fifth Circuit.[39]

### 4. Federal Officer Removal

Plaintiff asserts that Avondale Interests' "federal officer removal" argument fails.[40] Plaintiff outlines the law laid out in 28 U.S.C. § 1442(a)(1), which requires Avondale Interests show that: (1) it is a "person" as defined in Section 1442; (2) it acted pursuant to a federal officer's directions and a causal nexus exists between those actions and Plaintiff's claims; and (3) it has a

---

[35] *Id.* at 7.

[36] *Id.*

[37] *Id.* at 10.

[38] *Id.* at 10–12 (*citing Legendre v. Huntington Ingalls Incorporated*, 855 F.3d 398, 405 (5th Cir. 2018); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016); *Bartel v. Alcoa Steamship*, 805 F.3d 169, 174 (5th Cir. 2015)).

[39] *Id.* at 7 (citing 2018 WL 2049145 (E.D. La. May 1, 2018), *affirmed* 720 F. App'x 726 (5th Cir. 2018).

[40] *Id.* at 9.

"colorable federal defense" to the claims asserted.[41] Plaintiff argues that there is no causal nexus between a federal officer and Plaintiff's claims.[42]

In examining the causal nexus, Plaintiff identifies that the "challenged conduct" at issue in this case is not Federal Government action, but Avondale Interests' negligent "failure to take protective measures and failure to warn."[43] Plaintiff asserts that Avondale Interests have no support for the claim that the Federal Government compelled Avondale to not warn or protect Plaintiff from the dangers of asbestos.[44] Plaintiff argues that it is insufficient for Avondale Interests to claim that Avondale was acting under Department of Defense officials generally or that the Federal Government ordered Avondale to install asbestos products, as Avondale Interests must also show that Avondale was under substantial control of the Federal Government with regard to warning others of the presence of asbestos.[45] According to Plaintiff, the fact that the Federal Government specified that Avondale should use asbestos as one of the thousands of raw materials used in the project is insufficient by itself to create "federal officer" jurisdiction, just as the Federal Government's specification that Avondale should use steel does not create jurisdiction over a state law negligence action if a piece of steel dropped on a worker due to Avondale's negligence.[46]

Plaintiff highlights the relationship between the Federal Government and Avondale through the testimony of several individuals.[47] First, Plaintiff asserts that Avondale's own "safety

---

[41] *Id.* (citing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998)).

[42] *Id.* at 14.

[43] *Id.* at 15.

[44] *Id.* at 18

[45] *Id.* at 7–8.

[46] *Id.* at 2 n.1.

[47] *Id.* at 19.

man," Peter Territo, testified that "the government inspectors had absolutely no control over nor did they direct the Avondale safety equipment."[48] Plaintiff further points to an affidavit of Felix Albert, a former federal ship inspector for the United States Navy during the same time that Plaintiff worked for Avondale, in which Albert states that Avondale employees did not work under the direction of an officer of the United States.[49] According to Plaintiff, Albert also testified that the United States government inspectors did not monitor or enforce safety regulations, as that was the responsibility of Avondale.[50] Likewise, Plaintiff avers that Rudy Walker, a Navy inspector at Avondale, confirmed that the Navy did not supervise Avondale's work or oversee it while it was being performed.[51] Thus, Plaintiff avers that the evidence demonstrates that asbestos safety measures at Avondale were never under federal control.[52]

Additionally, Plaintiff contends that although Section 1442(a)(1) was amended in 2011, it did not bring negligence-based claims within the ambit of the federal officer removal statute.[53] Plaintiff argues that the Fifth Circuit addressed the amendment in *Zeringue v. Crane Company*, where the Fifth Circuit "made clear that a removing defendant must still establish a causal nexus between the challenged conduct at issue and the asserted federal authority" based on the facts of each case.[54] Moreover, Plaintiff argues that the Fifth Circuit's decision in *Zeringue* that federal officer removal was proper, is distinguishable, as the case involved claims for strict liability and

---

[48] *Id.* (citing Rec. Doc. 4-21).

[49] *Id.* (citing Rec. Doc. 4-19).

[50] *Id.* at 19–20.

[51] *Id.* at 20 (citing Rec. Doc. 4-20).

[52] *Id.*

[53] *Id.* at 12.

[54] *Id.* (citing 846 F.3d 785 (5th Cir. 2017)).

negligence against a product manufacturer who removed the case, whereas here, Avondale Interests are facing only negligence claims as a premises owner and employer.[55]

### 5. *Federal Contractor Defense*

Next, Plaintiff asserts that Avondale Interests do not have a colorable federal contractor defense.[56] Plaintiff argues that a federal contractor defense only applies if Avondale Interests can show: "(1) the government approved reasonably precise specifications that it not protect employees; (2) Avondale conformed to those specifications; and (3) Avondale warned the United States about the dangers that were known to it but not the United States."[57] Plaintiff argues that Avondale Interests fail to meet any of the requirements of this defense.[58]

First, Plaintiff argues that Avondale Interests "[have] not cited to any specification or government contract which prohibited them from implementing safety procedures at the shipyard."[59] Plaintiff further highlights that compliance with federal law, which required implementation of various safety measures related to the use of asbestos, does not constitute the "help or assistance necessary to bring a private person within the scope of the statute."[60]

Second, Plaintiff states that Avondale Interests cannot show that the Federal Government mandated regulations prohibiting the use of safety measures.[61] Plaintiff specifically notes that Avondale Interests did not enforce the Federal Government regulations aimed at promoting safety

---

[55] *Id.* at 12-18 (citing *Zeringue*, 846 F.3d at 788).

[56] *Id.* at 20.

[57] *Id.* (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)).

[58] *Id.* at 21–24.

[59] *Id.* at 21.

[60] *Id.* at 22 (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151-152 (2007)).

[61] *Id.* at 23.

in the handling of asbestos, which include segregating work done aboard ships, using respiratory protection equipment, and requiring a change of clothing before going home.[62]

Third, Plaintiff avers that Avondale has "submitted nothing in reference to its own knowledge as compared to that of the Navy" and that an employee admitted that Avondale was aware asbestos was hazardous as far back as the 1940s.[63] Therefore, Plaintiff argues that Avondale Interests cannot meet the third requirement for a federal contractor defense and show that the Federal Government had more knowledge of the harm caused by asbestos.[64]

### 6. Removal Pursuant to the LHWCA

Finally, Plaintiff argues that Avondale Interests' LHWCA defense is not a proper basis for removal.[65] To support this argument, Plaintiff points to *Aaron v. National Union Fire Insurance Co.*, wherein the Fifth Circuit "reiterated well-established law that a case cannot be removed to federal court on the basis of a federal defense" in the context of the LHWCA."[66]

### B. Defendant Foster Wheeler LLC's Opposition to the Motion to Remand

In opposition, Foster argues that the testimony of Mr. Rome, a former Avondale employee, is a "game changer" that demonstrates that Plaintiff came into contact with asbestos while aboard a government vessel.[67] Foster points to Mr. Rome's testimony that he personally knew Plaintiff, worked in the same position as Plaintiff on government vessels, and that he and others in his

---

[62] *Id.*

[63] *Id.* at 24.

[64] *Id.*

[65] *Id.*

[66] *Id.* at 25 (citing 876 F.2d 1157 (5th Cir. 1989)).

[67] Rec. Doc. 12 at 6.

position were "exposed to asbestos by working with or around asbestos-containing materials while working on [government] vessels."[68]

Foster then argues that removal is appropriate based on a colorable federal defense.[69] Foster argues that it is (1) a "person," (2) acting under the direction of a federal officer, (3) that it has raised a colorable federal defense, and (4) that there is a causal nexus between the Plaintiff's claims and the defendant's actions under federal direction.[70] First, Foster argues that the Federal Government exercised "direct and detailed control" over the design and manufacture of Navy equipment that lead to asbestos exposure.[71] Further, Foster argues that numerous district courts within and outside of the Fifth Circuit have repeatedly found that Foster Wheeler was "acting under…direct and detailed control" in similar design defect cases.[72]

Subsequently, Foster argues that it has a colorable federal defense because (1) the United States approved specifications, (2) to which Foster conformed, and (3) that the Federal Government knew the danger of, but which Foster did not.[73] Foster argues that its boilers were subject to "reasonably precise" Navy specifications that required the use of asbestos, that it

---

[68] *Id.* (internal citation omitted).

[69] *Id.* at 12.

[70] *Id.* at 13.

[71] *Id.* at 14.

[72] *Id.* (internal citations omitted).

[73] *Id.* at 15 (citing *Boyle*, 487 U.S. at 512).

conformed to these specifications, and that the Federal Government knew of the danger of asbestos decades before Plaintiff's alleged disclosure.[74]

Additionally, Foster argues that it meets the "quite low" burden to establish a causal nexus between Federal Government action and the defendant's conduct.[75] Foster argues that Mr. Rome's affidavit demonstrates that Plaintiff was exposed to asbestos while aboard a government vessel, despite Plaintiff's assertions otherwise.[76] Foster alleges that where a plaintiff "claims an injury occurred from an asbestos-containing product and a showing is made that the defendant's design and manufacture of that product was controlled by the Navy, a causal nexus has not simply been shown – it is 'axiomatic.'"[77]

Additionally, Foster argues that the Court also has jurisdiction over any claims "if there is evidence that the government was involved in the decision to give, or not to give, a warning."[78] Foster argues that "even absent evidence that a specific warning was considered by the Federal Government," the involvement of the Federal Government is proven, "by a showing of the government's detailed involvement in the choice of equipment-related warnings generally."[79] Foster argues the Federal Government was involved in the following ways:

> The Navy was involved in the decision of which warnings, if any, were to be provided with Foster Wheeler's boilers; the Navy carefully inspected and reviewed all written materials, including warnings, furnished with those boilers; Foster Wheeler could not have added other warnings without the Navy's prior express consent; and the Navy approved and accepted the boilers despite

---

[74] *Id.* at 16–18.

[75] *Id.* at 18.

[76] *Id.* at 19.

[77] *Id.* (citing *Madden v. Able Supply Co.*, 205 F.Supp.2d 695, 701–2 (S.D. Tex. 2002)).

[78] *Id.* at 20 (citing *Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 438 (5th Cir. 2000)).

[79] *Id.* at 21.

knowledge of their asbestos content, of hazards associated with asbestos, and of the lack of any warning as to those hazards.[80]

Foster also argues that "the mere fact that Foster Wheeler's alleged 'failure to warn' occurred in the context of its supply of Navy equipment demonstrates that a causal nexus exists between that purported failure and Foster Wheeler's conduct while 'acting under' the Navy's direction and control."[81] Ultimately, due to Foster's work for the Federal Government, Foster argues that removal is proper in this case.[82]

Finally, Foster argues that cross-claims, brought by Avondale Interests against Foster, can serve as an alternative basis for Removal.[83] Foster specifically claims that "it is clear that the causal nexus test is satisfied if either Plaintiff or Removing Defendants' claims arise from the use of asbestos in a product that the defendant designed and manufactured upon the government's request, particularly if (as here) the government contracted for the product's supply despite knowledge of its potential hazard."[84]

## C.    *Avondale Interests' Opposition to the Motion to Remand*

In their opposition memorandum,[85] Avondale Interests argue that: (1) removal is timely; (2) Avondale was "acting under" federal control when it built federal vessels; (3) Plaintiff's claims satisfy the "causal nexus" requirement under the amended federal officer removal statute; and (4) Avondale asserts colorable federal defenses.[86] Avondale Interests assert that this case was properly

---

[80] *Id.* at 23.

[81] *Id.* (citing *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 137–38 (2nd Cir. 2008)).

[82] *Id.*

[83] Rec. Doc. 12 at 19.

[84] *Id.*

[85] Rec. Doc. 21.

[86] *Id.* at 11–41.

removed to this Court under federal officer removal statute, 28 U.S.C. § 1442(a)(1).[87] Accordingly, Avondale Interests argues that the Court should deny the Motion to Remand.

### 1. *Timeliness of Removal*

Avondale Interests argue that removal is timely based on Leroy Rome's affidavit stating he knew Plaintiff, worked aboard some of the same vessels as Plaintiff, in a similar capacity as an insulator, and that he and other insulators were exposed to asbestos aboard these vessels.[88] Avondale Interests argue that Mr. Rome's affidavit should control the timeliness of removal because "only upon receipt of Mr. Rome's affidavit did Avondale become aware that Mr. Dempster's alleged exposure to asbestos included allegations of exposure on federal ships."[89] Avondale Interests argue that Mr. Dempster's testimony at a deposition that occurred prior to Mr. Rome's affidavit cannot trigger the 30-day removal period because it was not in writing and "Mr. Dempster repeatedly testified that he was not exposed to asbestos while working aboard federal ships at Avondale."[90]

### 2. *"Acting Under" Federal Control*

Avondale Interests argue that they were acting under federal control because they "[were] fulfilling the terms of contracts with the Federal Government, which required the use of asbestos, when [they] built the Destroyer Escorts for the Navy and the Coast Guard Cutters aboard which Mr. Dempster worked and was exposed to asbestos between 1962 and 1994."[91] Avondale Interests assert that they were acting under federal control as "both the Supreme Court and the Fifth Circuit

---

[87] *Id.* at 6.

[88] *Id.* at 13.

[89] *Id.*

[90] *Id.* at 12.

[91] *Id.* at 6–7.

have held that a private contractor acts under color of federal office when it 'is helping the Government to produce an item that [the Government] needs,' or is, 'perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'"[92]

### 3. *"Causal Nexus" Requirement*

Avondale Interests allege that the Fifth Circuit recently "broadened the 'old causal nexus' standard" in response to the "relating to" language added by a 2011 amendment to the federal officer removal statute.[93] Avondale Interests allege that "under the new 'relating to' language, a plaintiff's claims need only be associated with, or connected with, conduct under color of federal office to be removable."[94]

Additionally, Avondale Interests argue that removal is proper because "the Petition for Damages alleges facts sufficient to impose strict *garde* liability against Avondale under former Article 2317 of the Louisiana Civil Code."[95] As such, Avondale Interests argue that "this case is materially indistinguishable from *Savoie v. Huntington Ingalls, Inc.*, where the Fifth Circuit held that the plaintiffs' former Article 2317 strict liability claim satisfied the requirements for federal officer removal."[96] Avondale Interests argue that "although Mr. Dempster asserts in the Petition that he is 'not alleging that Avondale and its executive officers are liable for the mere use of

---

[92] *Id.* at 15 (citing *Watson*, 551 U.S. at 153–54; *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015)).

[93] *Id.* at 6–7 (citing *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 389, 399 (5th Cir. 2018)).

[94] *Id.*

[95] *Id.* at 7.

[96] *Id.* (internal citation omitted).

asbestos,' such assertions are mere legal conclusions that the Fifth Circuit has already rejected in *Savoie*."[97]

### 4. *Colorable Federal Defenses*

Finally, Avondale Interests argue that Plaintiff's claims are barred under the contractor immunity defense and that Avondale Interests assert a colorable federal defense under the LHWCA.[98] Avondale Interests argue that the government contractor defense "'provides immunity to contractors for conduct that complies with the specifications of a federal contract.'"[99] Avondale Interests claims that in order to prevail on the merits it must show: "(1) the government approved reasonably precise specifications for the construction of the ships; (2) the ships conformed to those specifications; and (3) the contractor warned the government of any hazards presented by the asbestos-containing components the government required that were known to the contractor but unknown to the government."[100] However, Avondale Interests claims that it does not need to prevail on the merits to demonstrate a "colorable or plausible" defense.[101]

Avondale Interests argue that they presented a colorable federal defense as to the government specifications requirement because "the government contract contained mandatory terms, conditions and specifications imposed upon Avondale."[102] Avondale Interests argue that they presented a colorable federal defense as to the conformity requirement because "had

---

[97] *Id.* (internal citation omitted).

[98] *Id.* at 26–41.

[99] *Id.* at 26 (citing *Crutchfield v. Sewerage and Water Bd. Of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (internal citations omitted)).

[100] *Id.* at 27 (citing *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017) (internal citations omitted)).

[101] *Id.*

[102] *Id.* at 29.

Avondale failed to comply with those specifications, the Destroyer Escorts and the Coast Guard Cutters would not have been accepted for delivery."[103] And Avondale Interests argue that they presented a colorable federal defense as to the warning requirement because "Avondale submits the affidavit of Christopher Herfel, a maritime historian who avers that the Federal Government knew as much, if not more, than Avondale did about the hazards of asbestos exposure, and that by the early 1940s the Federal Government had become an authoritative leader in the field of occupational medicine and industrial hygiene relating to the hazards of exposure to asbestos."[104]

Avondale Interests also argue that it presents a colorable federal defense under the LHWCA.[105] Avondale Interests argue that amendment to the LHWCA in 1972 bars claims where the latent injury manifested itself after the amendment, as is the case here.[106] Specifically, Avondale Interests point to *Pitre v. Huntington Ingalls, Inc.*, a decision by another district judge in the Eastern District of Louisiana, in which Avondale Interests alleges that the Court found the case was governed by the LHWCA, not state law, because the plaintiff did not develop lung cancer due to his asbestos exposure until 2016, long after amendment to the statute.[107]

---

[103] *Id.*

[104] *Id.* at 30–31.

[105] *Id.* at 32.

[106] *Id.* at 33–34.

[107] *Id.* at 37 (citing No. CV 17-7029, 2017 WL 6033032 (E.D. La. Dec. 6, 2017)).

**D.    Plaintiff's Reply in Support of the Motion to Remand**

**1. Plaintiff's Reply to Foster's Opposition**

In Response to Foster's Opposition,[108] Plaintiff argues that (1) there is no evidence he was exposed to asbestos from a Foster boiler aboard a government vessel, (2) he made no claims against Foster as related to government vessels, and (3) cross-claims cannot form the basis of removal.[109]

**a.    Exposure from a Foster Boiler**

Regarding the first argument, Plaintiff argues that while Mr. Rome's affidavit references "insulators" generally being exposed to asbestos aboard government vessels, he had no personal knowledge of Plaintiff's work aboard these ships.[110] Further, Plaintiff testified that he did not work with asbestos containing materials on government vessels as he only worked with "rubber piping and fiberglass."[111] Plaintiff argues his case is similar to *Melancon v. Lamorak Ins. Co.*, another case from the Eastern District of Louisiana, where the court found there was no federal interest in an asbestos case because there was "no basis to suggest that Mr. Melancon was exposed to asbestos from a Foster Wheeler boiler."[112]

**b.    Claims Against Foster related to a Government Vessel**

Regarding the second argument, Plaintiff highlights language from the petition showing he explicitly did not bring a claim against Foster for exposure to asbestos aboard a government vessel.[113] Specifically, Plaintiff points to language from the petition stating "with regard to Foster

---

[108] Rec. doc. 35.

[109] *Id.* at 2–8.

[110] *Id.* at 3.

[111] *Id.* at 4.

[112] *Id.* at 5 (No. 17-12367, 2018 WL 480823, at *6 (E.D. La. Jan. 19, 2018)).

[113] *Id.* at 6.

Wheeler boilers, plaintiff alleges that Mr. Dempster was exposed to asbestos from Foster Wheeler boilers on commercial vessels only."[114] Further, Plaintiff points to language from the petition stating "Petitioner's causes of action are based upon the acts and omissions of defendants or those for whom the defendants are responsible, and are specifically not based upon any act committed by the United States Government or at the direction of the United States Government."[115]

### c. Cross-claims as the Basis for Removal

Regarding the third argument, Plaintiff argues that Avondale Interests has not included any additional claims in its cross-claim against Foster, rather Plaintiff argues that Avondale Interests "merely adopted plaintiff's allegations."[116] Further, Plaintiff argues that "even if we assume that the Avondale Interests had included allegations regarding government vessels, the *Hayden* Court specifically rejected the argument that an assertion of a cross-claim provides a sufficient basis for jurisdiction."[117]

### 2. Plaintiff's Reply to Avondale Interests' Opposition

In reply to Avondale Interests' Opposition,[118] Plaintiff argues that (1) removal is untimely; (2) there is no evidence that Plaintiff was exposed to asbestos on a government vessel; (3) Plaintiff has made no claims for strict liability against Avondale Interests; (4) removal is not appropriate under these circumstances on the basis of a defendant as employer or property owner, and (5) the LHWCA is not a bar to Plaintiff's claims.[119]

---

[114] *Id.* (citing Rec. Doc. 4-5 at 29–30).

[115] *Id.* (citing Rec. Doc. 4-5 at 31).

[116] *Id.* at 7.

[117] *Id.* (citing *Hayden v. 3M Company*, 2015 U.S. Dist. LEXIS 104534, *19–20 (E.D. La. 8/10/15).

[118] Rec. Doc. 35.

[119] *Id.* at 1–21.

### a. Timeliness of Removal

Plaintiff argues that the notice of removal is untimely because the affidavit of Leroy Rome, used as the basis for removal by Defendants, "does not add any additional information regarding Callen Dempster's work aboard the Destroyer Escorts that did not already exist in Mr. Dempster's deposition."[120] Plaintiff asserts that "the only information specific to Callen Dempster that LeRoy Rome provided was that he worked on a different shift than Callen Dempster and that Callen Dempster worked aboard the Destroyer Escort."[121] Plaintiff argues that the affidavit does not state that Mr. Rome saw Plaintiff handle asbestos at any time.[122] Therefore, Plaintiff argues that his own deposition, in which Plaintiff identified he worked on Destroyer Escorts, should act as the controlling date and that removal should be barred on the basis of Defendants failure to respond within 30 days.[123]

### b. Exposure Aboard a Government Vessel

Plaintiff argues that there is "no evidence" that he was exposed to asbestos aboard a Destroyer Escort vessel.[124] Plaintiff alleges that Foster specifically "misrepresents" the information put forth in the affidavit of Mr. Rome.[125] Plaintiff states that in his affidavit Mr. Rome indicated that he knew Plaintiff, and that he worked aboard "some" of the same Destroyer Escort vessels as Plaintiff.[126] However, Plaintiff also points out that Mr. Rome's affidavit highlights that

---

[120] *Id.* at 1.

[121] *Id.*

[122] *Id.* at 1–2.

[123] *Id.*

[124] *Id.* at 2.

[125] *Id.*

[126] *Id.*

Mr. Rome and Plaintiff did not work at the same time, as they both had different work shifts.[127]

Therefore, Plaintiff argues that Mr. Rome could not have known whether or not Plaintiff came into

contact with asbestos on these ships.[128] Further, Plaintiff argues that his own testimony contradicts

Foster's conclusions, in that he testified he did not come into contact with asbestos aboard a

government vessel, that he only worked on the vessels for a short time, and that he only worked

with rubber piping and fiberglass.[129]

### c. *Strict Liability against Avondale Interests*

Plaintiff argues that he only brought negligence claims against Avondale Interests in the

petition and that Avondale Interests attempt to argue otherwise is a mischaracterization of the

petition.[130] Specifically, Plaintiff points to language stating:

> However, with regard to Avondale and its executive officers, they are liable
> because they failed to properly handle and control the asbestos which was in their
> care, custody, and control. Petitioners are not alleging that Avondale and its
> executive officers are liable for the mere use of asbestos; rather, Avondale and its
> executive officers are liable for the misuse of asbestos, including but not limited to
> the failure to warn of the hazardous nature and dangers of asbestos and for the
> failure to take and implement reasonably safe and industrial hygiene measures,
> failure to train, and failure to adopt safety procedures for the safe installation and
> removal of asbestos.[131]

Plaintiff then makes comparisons between similar claims in the Fifth Circuit to show that this

language from the petition does not raise a strict liability claim susceptible to removal, but rather

that the petition only raises a negligence claim against Avondale Interests.[132]

---

[127] *Id.*

[128] *Id.* at 2–3.

[129] *Id.*

[130] *Id.* at 9.

[131] *Id.* (citing Rec. Doc. 4-5 at 6–7).

[132] *Id.* at 8–10 (citing *Melancon v. Lamorak Ins. Co.*, No. CV 17-12367, 2018 WL 480823 (E.D. La. Jan. 19, 2018); *Wilde v. Huntington Ingalls, Inc.*, 616 Fed.Appx. 710 (5th Cir. 2015); *Pitre v. Huntington Ingalls, Inc.*,

#### d. Removal Based on Employer or Property Owner Relationship

Plaintiff argues that removal is not appropriate here because Avondale Interests were employers and property owners with respect to Plaintiff, which Plaintiff contends is distinguishable from the product manufacturer relationship that exists in cases where courts have found removal appropriate.[133] Plaintiff argues that because Avondale Interests are not product manufacturers, this case is further cemented in the line of negligence cases where removal is not appropriate, as opposed to strict liability cases where removal is appropriate.[134]

#### e. LHWCA Defense

Plaintiff argues that "the law provides that Mr. Dempster's state law claims would still not be preempted by LHWCA, as the facts of this case present a scenario of concurrent jurisdiction."[135] In support, Plaintiff argues that he "has not elected LHWCA nor state compensation benefits."[136] Plaintiff argues that state law can apply in this case "even if the injury occurred on navigable waters" if the nature of an employee's work was of local concern.[137] Plaintiff argues that this distinction is relevant to his claim because Plaintiff worked building new ships in a shipyard and"[t]here is no dispute that an injury occurring during the construction of new ships is 'maritime but local,'" even if occurring on navigable waters.[138] Plaintiff argues that Foster cannot "invoke a

---

No. CV 17-7029, 2017 WL 6033032 (E.D. La. Dec. 6, 2017); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016)).

[133] *Id.* at 11.

[134] *Id.* at 11–17 (citing *Zeringue v. Crane Company*, 846 F.3d 785 (5th Cir. 2017)).

[135] *Id.* at 18.

[136] *Id.*

[137] *Id.* (citing generally *Western Fuel Co. v. Garcia*, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); *Grant Smith-Porter Ship Co. v. Rohde*, 27 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922)).

[138] *Id.* (citing generally *Western Fuel Co.*, 257 U.S. 23 42 S.Ct. 89, 66 L.Ed. 210 (1921); *Grant Smith-Porter Ship Co. v. Rohde*, 27 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922); *Sun Ship, Inc. v. Pennsylvania*, 447 U.S.

federal officer immunity defense, where [he] did not allege exposure…aboard government vessels."[139]

## F. *Foster Wheeler LLC's Sur-Reply in Opposition to the Motion to Remand*

In the sur-reply brief,[140] Foster argues that Plaintiff's reply in support of the Motion to Remand "mischaracterizes applicable case law."[141] Specifically, Foster argues that Plaintiff mischaracterizes the court's decision in *Hayden v. 3M Co.*[142] Foster alleges that in *Hayden*, the Court did not "specifically reject the argument that an assertion of a cross-claim provides a sufficient basis for jurisdiction," as argued by Plaintiff, but that "[i]nstead, the Court found that a defendant, who asserts a cross-claim, cannot use their own assertion of a cross-claim as a basis for federal officer removal jurisdiction, because the removal statute requires defendant to raise a colorable 'defense' to a 'claim.'"[143] And here, Foster argues, it is "not asserting its own cross-claim as basis of its removal," but that "Avondale's cross-claims against Foster are a sufficient basis for Foster's removal."[144]

Additionally, Foster argues that *Melancon v. Lamorak Ins. Co.*, "merely provides there must be evidence to suggest exposure to equipment and/or products on federal vessels."[145] And

---

715, 719, 100 S.Ct. 2432, 2436, 65 L.Ed.2d 48 (1980)).

[139] *Id.* at 7.

[140] Rec. Doc. 39.

[141] *Id.* at 1.

[142] *Id.* (citing No. 15-2275, 2015 WL 4730741, at *1 (E.D. La. Aug. 10, 2015)).

[143] *Id.*

[144] *Id.* at 2.

[145] *Id.* (citing *Melancon v. Lamorak Ins. Co.*, No. 17-12367, 2018 WL 480823, at *6 (E.D. La. Jan. 19, 2018)).

here, Foster argues that standard is met through the Rome Affidavit which suggests "[Plaintiff] worked on DE vessels around boilers."[146]

## G.   *Plaintiff's Supplemental Memorandum to Support Remand*

Plaintiff files a supplemental memorandum to "advise the Court of the U.S. Fifth Circuit's most recent decision in *Melancon v. Lamorak Ins. Co*.[147] Plaintiff states in both the original Motion to Remand and reply memorandum, he relied upon the district court's decision in *Melancon*.[148] Plaintiff states that the Fifth Circuit has now considered and affirmed the remand order issued in *Melancon*.[149] Plaintiff further states that "the Fifth Circuit reiterated that the 2011 amendment does not extend to plaintiff's negligence claims against the Avondale Interests, which is 'private conduct that implicates no federal interests, as this would stretch the causal nexus requirement to the point of irrelevance.'"[150]

## H.   *Plaintiff's Second Supplemental Memorandum to Support Remand*

Plaintiff files a supplemental memorandum to "make abundantly clear that Mr. Rome cannot offer any testimony regarding whether or not Callen Dempster was exposed to asbestos on a Destroyer Escort and to further illustrate that the sole purpose of the filing of the motion to remand was to delay Mr. Dempster's November 5, 2018, trial date in state court, which the defendants have now succeeded in doing."[151] Plaintiff's supplemental filing includes a second

---

[146] *Id.*

[147] *Id.* at 1 (citing 2018 U.S. App. LEXIS 20798 (5th Cir. 2018)).

[148] *Id.*

[149] Id.

[150] *Id.* (citing *Melancon*, 2018 U.S. App. LEXIS 20798, at *4).

[151] Rec. Doc. 74-1 at 1.

affidavit from Mr. Rome, which confirms he never personally saw Plaintiff working aboard government vessels, working in a boiler room, or exposed to asbestos.[152]

## I.    *Avondale Interests' Supplemental Memorandum to Oppose Remand*

Avondale Interests file a supplemental memorandum to address the second affidavit submitted by Mr. Rome and show that it "did not alter the issues before this Court."[153] Avondale Interests attach a deposition of Mr. Rome that primarily repeats the testimony already presented in his previous two affidavits.[154] In this deposition, Mr. Rome confirms that he did not work directly with the Plaintiff,[155] but that he left notes for the night crew and that insulators generally were exposed to asbestos aboard government vessels.[156] Further, Mr. Rome confirms that "insulators many times would have to work with insulation that didn't contain asbestos" and that during this period some insulators worked with rubber and fiberglass.[157] Regarding whether Plaintiff was exposed to asbestos, Mr. Rome states that "it depends where he was working at…if they was close to it."[158]

## III. Legal Standard

Pursuant to the current text of 28 U.S.C. § 1442(a)(1), a civil action commenced in state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for

---

[152] Rec. Doc. 74-4 at 1.

[153] Rec. Doc. 80-1 at 1.

[154] Rec. Doc. 80-2.

[155] *Id.* at 24.

[156] *Id.* at 14.

[157] *Id.* at 24.

[158] *Id.* at 22.

or relating to any act under color of such office" may be removed to federal court. The purpose of the federal officer removal statute is to protect the Federal Government from undue state interference of its lawful activities.[159] Before Section 1442(a)(1) was amended in 2011, a person acting under a federal officer could only remove a case to federal court if the state lawsuit was "for any act under color of such office;" after the 2011 amendment, Section 1442 allows removal of a state suit "for *or relating to* any act under color of such office."[160] According to the Fifth Circuit, "[t]he plain meaning of the added language broadens the scope of the statute as the ordinary meaning of [the phrase 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"[161]

Unlike the general removal statute, which must be "strictly construed in favor of remand," the federal officer removal statute's language must be liberally interpreted.[162] Nonetheless, its "broad language is not limitless."[163] It is the removing party's burden to establish the existence of federal jurisdiction over the controversy.[164] Orders remanding a case to state court that was removed pursuant to the federal officer removal statue are appealable under 28 U.S.C. § 1447(d) and are reviewed *de novo* by the Fifth Circuit, "without a thumb on the remand side of the scale."[165]

---

[159] *See Mesa v. California*, 489 U.S. 121, 126 (1989); *Bartel v. Alcoa Steamship Co.*, 64 F. Supp. 3d 843, 852–53 (M.D. La. 2014), *aff'd sub nom. Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015); *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., LLC*, 809 F. Supp. 2d 524, 529 (E.D. La. 2011) (Vance, J.).

[160] 28 U.S.C. § 1442(a)(1) (emphasis added); *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (discussing the 2011 amendment).

[161] *Zeringue*, 846 F.3d at 793 (quotation marks omitted).

[162] *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) ("Furthermore, this right is not to be frustrated by a grudgingly narrow interpretation of the removal statute."); *Bartel*, 64 F. Supp. 3d at 852–53; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[163] *Watson*, 551 U.S. at 147; *Winters*, 149 F.3d at 397.

[164] *Winters*, 149 F.3d at 397; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[165] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 460 (5th Cir. 2016).

The Fifth Circuit has adopted a three-part inquiry to determine whether a government contractor qualifies as a "person acting under [a federal] officer" who is sued "in an official or individual capacity for any act under color of such office."[166] The contractor must prove that: (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and the plaintiff's claims; and (3) it has a colorable federal defense to the plaintiff's claims.[167]

## IV. Analysis

While the parties present numerous arguments,[168] for the reasons that follow, the Court finds that removal pursuant to 28 U.S.C. § 1442(a)(1) was improper. Defendants have not shown that the necessary causal nexus between Avondale Interests' or Foster's actions under color of federal office and Plaintiff's negligence claims exists. As stated *supra*, in order to show that removal under the federal officer removal statute is proper, Defendants must show that: (1) they are "person[s]" within the meaning of the statute; (2) they acted pursuant to a federal officer's directions, and a causal nexus exists between their actions under color of federal office and the plaintiff's claims; and (3) they have a colorable federal defense to the plaintiff's claims.[169]

---

[166] *Id.*; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[167] *Winters*, 149 F.3d at 397; *Savoie*, 817 F.3d at 460; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529.

[168] Plaintiff raises multiple arguments in favor of remand related to the timeliness of removal and removal under a colorable federal defense. However, the Court finds it only needs to address one basis for remand in this case: the federal officer removal statute.

[169] 28 U.S.C. § 1442(a)(1); *Winters*, 149 F.3d at 397; *Savoie*, 817 F.3d at 460; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529; *see also Blouin v. Huntington Ingalls Inc.*, No. 17-2636, 2017 WL 2628103, at *5 (E.D. La. June 19, 2017) (Zainey, J.).

## A. Analysis of Avondale Interests' Removal Arguments

With regard to the first factor, Plaintiff does not dispute that Avondale, as a corporation, qualifies as a "person" within the meaning of Section 1442. Both the Supreme Court and the Fifth Circuit have recognized that the removal statute applies to both private persons and corporate entities "'who lawfully assist' the federal officer 'in the performance of his official duty.'"[170] Therefore, the Court finds that Avondale has sufficiently shown that the corporation is a "person" within the meaning of the federal officer removal statute.

With regard to the second factor, Plaintiff argues that Avondale Interests cannot show that the corporation acted pursuant to a federal officer's directions when it allegedly failed to warn and protect Plaintiff from the dangers of asbestos, or that there is a causal nexus between Avondale Interests' actions under color of federal office and Plaintiff's negligence claims.[171] First, Plaintiff disputes that he ever came into contact with asbestos aboard a government vessel.[172] Plaintiff stated in his deposition that he "only worked a short time on those government ships," and that he worked with fiberglass and cloth that did not contain asbestos.[173] Further, Plaintiff stated that he did not work in the engine rooms of government vessels because he was a new employee that "was just learning" and was not yet fully trained.[174] If Plaintiff never came into contact with asbestos aboard a government vessel, then no federal interest is implicated, and no federal jurisdiction exists.[175]

---

[170] *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551 U.S. at 151 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883))).

[171] Rec. Doc. 4-1 at 7–20.

[172] Rec. Doc. 4-23 at 3–4.

[173] *Id.*

[174] *Id.* at 4.

[175] *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Federal jurisdiction rests on a 'federal interest in the matter,' the very basic interest in the enforcement of federal law through federal officials.") (internal citations omitted).

The only evidence of exposure on which Defendants rely is the affidavit of another Avondale insulator, Mr. Rome. In his first affidavit, Mr. Rome states that he and other insulators, like Plaintiff, were "exposed to asbestos by working with or around asbestos-containing materials while working on DE vessels," that he knew Plaintiff worked on the same vessels that he did because "I [Rome] would leave instructions for the night crew, which included [Plaintiff]," and that the duties of Avondale insulators included work with asbestos-containing products.[176] However, as Mr. Rome was a member of the night crew, he does not have personal knowledge that Plaintiff, a member of the day crew, ever dealt with asbestos aboard a government vessel.[177] Rather, he only has knowledge that insulators generally were exposed to asbestos-containing materials.[178] This is further confirmed by both the subsequent affidavit submitted by Plaintiff and the deposition transcript submitted by Avondale Interests.[179] In the second affidavit, Mr. Rome confirms that he never personally saw Plaintiff working aboard government vessels, working in a boiler room, or exposed to asbestos.[180] In his submitted deposition, Mr. Rome again confirms that he did not work directly with the Plaintiff,[181] but that he left notes for the night crew and that insulators generally were exposed to asbestos aboard government vessels.[182] Further, Mr. Rome confirms that "insulators many times would have to work with insulation that didn't contain

---

[176] Rec. Doc. 1-3 at 1–2.

[177] *See id.*

[178] *See id.*

[179] Rec. Docs. 74-4, 80-2.

[180] Rec. Doc. 74-4 at 1.

[181] *Id.* at 24.

[182] *Id.* at 14.

asbestos" and that during this period some insulators worked with rubber and fiberglass.[183] Regarding whether Plaintiff was exposed to asbestos, Mr. Rome states that "it depends where he was working at…if they was close to it."[184]

In contrast, Plaintiff states in his deposition that he was a new employee during the short time he worked on government vessels, and thus did not handle the same materials or work on the same parts of the vessel as more senior insulators, such as Mr. Rome.[185] The present facts are similar to *Melancon v. Lamorak Insurance Company*, a case from the Eastern District of Louisiana that was subsequently affirmed by the Fifth Circuit.[186] In *Melancon*, the district court found there was no federal interest in the matter, in part, because Defendants had failed to show that plaintiff, who worked outside the engine room, was exposed to asbestos via a boiler in the engine room.[187] Here, Defendants present no evidence that Plaintiff came into contact with asbestos aboard a government vessel, and thus, no federal interest is implicated.

Moreover, even if the Court was to accept Defendants' argument that Plaintiff came into contact with asbestos aboard a government vessel as true, the Court does not find that the necessary causal nexus exists between Federal Government action and Plaintiff's injury. Avondale Interests assert that, under the current "for or relating to" language of Section 1442(a)(1), Avondale has demonstrated that the duties of care it owed Plaintiff resulted directly from the government's specifications to use asbestos-containing materials in constructing the federal vessels.[188]

---

[183] *Id.* at 24.

[184] *Id.* at 22.

[185] *See* Rec. Doc. 4-23 at 3–4.

[186] *See Melancon v. Lamorak Insurance Company*, 2018 U.S. App. LEXIS 20798, *6 (5th Cir. 2018).

[187] *See id.*

[188] Rec. Doc. 1 at 4–5.

Therefore, Avondale Interests argue that Plaintiff's negligence claims are "related to" its actions pursuant to the Federal Government's directions.[189]

In *Bartel v. Alcoa S.S. Company*, a 2015 case decided after Section 1442(a) was amended in 2011, the Fifth Circuit explained that it is "necessary *but not sufficient* for a defendant to show it 'acted pursuant to a federal officer's directions,'" as the removing party must also show that a causal nexus exists.[190] In *Bartel*, the Fifth Circuit instructed that, when considering whether a causal nexus exists for removal, it is "important to understand the nature of the plaintiffs' allegations . . . [for] failure to warn, failure to train, and failure to adopt procedures for the safe installation and removal of asbestos."[191] Thus, the *Bartel* court opined that the proper approach for such negligence claims is to consider whether the Federal Government exercised control over safety requirements such that a failure to warn was caused by the Federal Government's instructions.[192] Because the defendants "[could] do no better than to show that the Federal Government owned the vessels in question" and did not produce evidence that the Federal Government issued orders relating to safety procedures or asbestos, the Fifth Circuit held that remand was proper.[193] "What little evidence there is suggests the Federal Officer Defendants operated the vessels in a largely independent fashion and, at a minimum, were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries."[194]

---

[189] *Id.*

[190] *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172 (5th Cir. 2015) (emphasis added) (quoting *Winters*, 149 F.3d at 398).

[191] *Id.* at 173.

[192] *Id.* (citing *Lalonde v. Delta Field Erection*, No. 96-3244, 1998 WL 34301466, at *1 (M.D. La. Aug. 6, 1998)).

[193] *Id.* at 174.

[194] *Id.*

A year later in *Savoie v. Huntington Ingalls, Inc.*, the Fifth Circuit again held that, "with respect to the [plaintiff's] negligence claims, we agree with the district court that the federal government's mandate of asbestos insulation did not cause the shipyard to engage in the challenged conduct."[195] In other words, the Fifth Circuit concluded that negligence claims for failing to warn of the dangers of asbestos or to take safety precautions against asbestos exposure "did not challenge actions taken under color of federal authority even though the government was responsible for the existence of the asbestos."[196] The Fifth Circuit noted that the shipyard failed to demonstrate that its government contracts "prevented it from taking any of these protective measures identified by Plaintiffs," as an affidavit stating that the Navy inspected and oversaw the vessels for safety was insufficient to trigger Section 1442(a)(1) jurisdiction.[197] The Fifth Circuit further pointed out that the other evidence presented made clear that the government had no control over the shipyard's safety procedures or safety department.[198] In sum, the Fifth Circuit concluded that because the plaintiff's negligence claims "challenge[d] discretionary acts of the shipyard free of federal interference" and "the government's directions to the shipyard via the contract specifications did not cause the alleged negligence," removal on those grounds was not proper.[199] The Fifth Circuit further determined, however, that the plaintiff's strict liability claims against the shipyard, which were premised on the "mere use of asbestos" and "do not turn on discretionary decisions made by the shipyard," supported federal officer removal.[200]

---

[195] 817 F.3d 457, 462 (5th Cir. 2016).

[196] *Id.*

[197] *Id.* at 463.

[198] *Id.*

[199] *Id.*

[200] *Id.* at 465.

A line of similar asbestos cases before the Fifth Circuit culminated in *Legendre v. Huntington Ingalls, Inc.*, wherein the court again affirmed a district court order remanding an asbestos case to state court.[201] The plaintiffs in *Legendre* alleged that Huntington Ingalls failed to warn them of the risks of asbestos exposure and failed to implement proper safety procedures for handling asbestos.[202] Referencing earlier cases, the Fifth Circuit explained that strict liability claims that "rest[ ] on the mere use of asbestos" support removal because they are "causally linked to the [government's] requirement that its ships contain asbestos."[203] But negligently "failing to warn, train, and adopt safety procedures regarding asbestos" does not support removal because it is "private conduct that implicate[s] no federal interest."[204]

This Court has also addressed the distinction between the federal officer removal standard for acts of negligence and strict liability in *Templet v. Huntington Ingalls, Inc*.[205] In *Templet*, the Fifth Circuit ultimately affirmed this Court's opinion, holding that negligence claims do not support federal officer removal, while strict liability claims do support federal officer removal.[206] The Fifth Circuit stated that removal is not appropriate in asbestos cases where the plaintiff brings negligence claims and there is no evidence the Federal Government exercised control over the operations of private employers.[207] Specifically, the Fifth Circuit stated that "allowing removal

---

[201] 885 F.3d 398 (5th Cir. 2018).

[202] *See* 885 F.3d at 399

[203] *Id.* at 401 (quoting *Savoie*, 817 F.3d at 465–66).

[204] *Id.* at 402 (quoting *Zeringue*, 846 F.3d at 794).

[205] 2018 WL 2049145 (E.D. La. May 1, 2018), affirmed 720 Fed. Appx. 726 (May 1, 2018).

[206] *See Templet v. Huntington Ingalls, Inc.*, 2018 WL 2049145 (E.D. La. May 1, 2018), affirmed 720 Fed. Appx. 726 (May 1, 2018).

[207] *See id.* at 727.

when the defendants were free to adopt the safety measures at issue, 'would have stretched the causal nexus requirement to the point of irrelevance.'"[208]

Most recently, the Fifth Circuit affirmed a ruling by another district judge in the Eastern District of Louisiana remanding *Melancon v. Lamorak Insurance Company*, the "latest in an ever-increasing line of cases brought by former Huntington Ingalls employees or their family members in state court alleging asbestos exposure."[209] In *Melancon*, the Fifth Circuit once again acknowledged the amendment to the statutory language and found that the case was properly remanded by the district court because plaintiff brought negligence claims and "there is no evidence that Huntington Ingalls could not have adopted the warnings or safety procedures proposed by the Melancons."[210]

This litigation was removed to this Court by Avondale Interests, consisting of Defendants Huntington Ingalls Incorporated, Albert Bossier, Jr., J. Melton Garret, and Lamorak Insurance Company.[211] Avondale Interests allege that removal is proper because this is an action "for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1)."[212]

Plaintiff alleges that he was employed by Avondale from 1962 to 1994.[213] During that time, Plaintiff avers that he was exposed to asbestos and asbestos-containing products in various locations and work sites, resulting in Plaintiff breathing in asbestos fibers and later developing

---

[208] *Id.* (quoting *Zeringue*, 846 F.3d at 794).

[209] *Melancon v. Lamorak Ins. Co.*, 2018 U.S. App. LEXIS 20798, *1 (5th Cir. 2018).

[210] *Id.* at *2.

[211] Rec. Doc. 1 at 2.

[212] *Id.*

[213] Rec. Doc. 1-2 at 4.

asbestos-related cancer.[214] Plaintiff asserts strict liability and negligence claims against various

Defendants.[215] But specifically, Plaintiff alleges that:

> All asbestos companies had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of Mr. Dempster and for which these defendants are liable under Louisiana law. However, with regard to Avondale and its executive officers, they are liable because they failed to properly handle and control the asbestos which was in their care, custody, and control. Petitioners are not alleging that Avondale and its executive officers are liable for the mere use of asbestos; rather, Avondale and its executive officers are liable for the misuse of asbestos, including but not limited to the failure to warn of the hazardous nature and dangers of asbestos and for the failure to take and implement reasonably safe and industrial hygiene measures, failure to train, and failure to adopt safety procedures for the safe installation and removal of asbestos.[216]

Plaintiff has only brought negligence claims against Avondale for its alleged failure to take

certain safety precautions and warn Plaintiff about the dangers of asbestos.[217] These allegations

are distinguishable from the allegations in *Savoie*, where the Plaintiff brought some negligence

claims against Huntington Ingalls, Inc. and some strict liability claims against Huntington Ingalls,

Inc.[218] Instead, these allegations are similar to the allegations in *Templet*, where the plaintiff

alleged that Avondale acted negligently by failing to: (1) provide Plaintiff with a safe work

environment or adequate safety equipment; (2) warn Plaintiff about the hazards of asbestos or

---

[214] *Id.*

[215] *Id.*

[216] *Id.* at 6–7.

[217] *Id.* at 11–15.

[218] *See Savoie*, 817 F.3d at 463–64 ("The district court found that the claims the Savoies labeled as 'strict liability' causes of action in actuality alleged negligence. This is true of some of the claims given that label such as the one that alleges that the shipyard 'was aware or should have been aware of the dangerous condition presented by exposure to asbestos" yet "failed and/or willfully withheld from Mr. Savoie knowledge of the dangers to his health from exposure to asbestos fiber.' But others—'All defendants had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of Mr. Savoie and for which these defendants are strictly liable under Louisiana law'—are based on the mere use of asbestos on the ships and therefore fit the strict liability label.").

reveal critical information regarding the risks associated with asbestos; (3) timely remove asbestos hazards from the workplace; (4) properly ensure compliance with safety regulations; (5) provide a safe means of eliminating asbestos dust in the air; and (6) provide necessary protections to lessen or eliminate the transfer of asbestos from the workplace to Plaintiff's home.[219] Plaintiff does not assert any strict liability claims Avondale Interests, as Plaintiff goes to efforts to make clear in its petition, as quoted *supra*.[220] Based on the foregoing, and in light of the Fifth Circuit's holdings in *Bartel*, *Savoie*, *Legendre*, *Templet*, and *Melancon* the Court finds that Avondale Interests has not shown the second prong of the federal officer removal statute is met, *i.e.* that a causal nexus exists between its actions under color of federal office and the plaintiff's claims.

In response, Avondale Interests point to the existence of the Federal Government contract as the basis for Plaintiff's work and the Federal Government's specifications that asbestos-containing products were to be used in constructing the federal vessels.[221] Avondale further argues that the 2011 amendment to the text of Section 1442(a)(1) widens the scope of the federal officer removal statute.[222] However, as the Fifth Circuit has made clear in multiple cases decided under the current version of 28 U.S.C. § 1442(a)(1), removal is not proper when the "federal government's mandate of asbestos insulation did not cause the shipyard to engage in the challenged conduct."[223] In *Zeringue v. Crane Company*, a case decided in 2017, the Fifth Circuit

---

[219] *See Templet v. Huntington Ingalls, Inc.*, 274 F.Supp. 3d 469, 483 (E.D. La. 2017).

[220] *See* Rec. Doc. 1-2 at 6–7.

[221] *See* Rec. Doc. 21 at 29 ( Removal is appropriate"[b]ecause Avondale has submitted evidence showing that the Navy Destroyer Escorts and the Coast Guard Cutters, aboard which [Plaintiff] was allegedly exposed to asbestos, were built under contracts executed between Avondale and the United States government and contained mandatory terms, conditions and specifications imposed upon Avondale by the government.").

[222] *Id.*

[223] *See Savoie*, 817 F.3d at 462.

directly addressed the effect of the 2011 amendment on Section 1442.[224] In *Zeringue*, the Fifth Circuit confirmed that Section 1442, "both before and after the 2011 amendment," requires the causal nexus prong to be satisfied, and that while the 2011 amendment expanded the breadth of acts within the removal statute's reach, courts should not "attenuate the causal nexus requirement 'to the point of irrelevance.'"[225]

While the *Zeringue* court ultimately concluded that removal was proper because the manufacturer-defendant had shown that it was ordered by the Navy to provide the asbestos-containing parts on which the plaintiff's strict liability claims were premised, it recognized that its holding was consistent with the Fifth Circuit's decision in *Bartel*, that involved claims for failure to warn or provide safety measures analogous to Plaintiff's here.[226] The Fifth Circuit recognized that the conduct in *Bartel* "implicated no federal interest," and allowing those defendants to remove "would have stretched the causal nexus requirement to the point of irrelevance."[227] Thus, contrary to Avondale's suggestion that the decision in *Zeringue* supports removal here, *Zeringue* confirms that *Bartel* remains good law.[228] By contrast, Avondale does not distinguish the facts of this case from the negligence claims raised in *Bartel*, *Savoie*, *Legendre*, *Templet,* and *Melancon*, or otherwise show how Plaintiff's claims are "related to" Avondale's acts under color of federal office such that a causal nexus exists.

---

[224] 846 F.3d 785, 793 (5th Cir. 2017).

[225] *Id.* (citing *Wilde v. Huntington Ingalls, Inc.*, 616 Fed. App'x 710, 713 (5th Cir. 2015)).

[226] *Id.* at 788, 794.

[227] *Id.* at 794.

[228] *See, e.g., Blouin v. Huntington Ingalls Inc.*, No. 17-2636, 2017 WL 2628103, at *6 (E.D. La. June 19, 2017) (Zainey, J.) ("Simply, *Zeringue* expressly recognizes that *Bartel* remains a correct result even under the 2011 amendments.").

Here, like in *Bartel*, Plaintiff only asserts negligence claims against his employer, Avondale, for its failure to meet its duties to Plaintiff. Moreover, Avondale Interests have adduced no evidence that the Federal Government prevented Avondale from taking the protected measures identified by Plaintiff or exercised control over Avondale's safety procedures or safety department.[229] In other words, Avondale has not demonstrated that its own discretionary decisions to allegedly fail to warn or protect Plaintiff from the dangers of asbestos while Plaintiff was employed by Avondale resulted from or are "related to" its actions under color of federal office, to the extent that any such actions exist.[230] As such, this case is distinguishable from *Papp v. Fore-Kast Sales Company*, decided by the Third Circuit in 2016,[231] and *Sawyer v. Foster Wheeler LLC*, decided by the Fourth Circuit in 2017,[232] which both found that there was evidence that the Federal Government exercised some control over asbestos warnings and safety materials, and thus removal of a failure to warn claim was proper.[233] Rather, similar to the plaintiff in *Savoie*, Plaintiff has pointed to affidavits from both a federal inspector and a former Avondale Safety Director that confirmed that the Federal Government did not exercise any control over Avondale's safety department or its compliance with safety regulations.[234] Therefore, based on the Fifth Circuit case law and the facts as presented in this case, the Court finds Avondale Interests' removal pursuant to 28 U.S.C. § 1442(a)(1) was improper.

---

[229] *Savoie*, 817 F.3d at 463.

[230] 28 U.S.C. § 1442(a)(1).

[231] 842 F.3d 805, 813 (3d Cir. 2016).

[232] 860 F.3d 249, 258 (4th Cir. 2017).

[233] *Sawyer*, 860 F.3d at 258 (noting that the Navy dictated the content of warnings on the defendant's boilers); *Papp*, 842 F.3d at 813 (pointing out that the United States Armed Forces exercised control over the written materials and warnings associated with the aircraft at issue).

[234] *See* Rec. Doc. 4-21, 4-19.

## B. Analysis of Foster's Removal Argument

As an alternative to Avondale Interests' arguments for removal, Foster argues that federal officer removal is also appropriate based on its role in the case.[235] Therefore, Foster must show (1) it is a "person" within the meaning of the statute; (2) it acted pursuant to a federal officer's directions, and a causal nexus exists between its actions under color of federal office and the plaintiff's claims; and (3) it has a colorable federal defense to the plaintiff's claims.[236] Plaintiff does not argue that Foster is not a "person" within the meaning of Section 1442. However, Foster's claim fails because, like Avondale Interests, it cannot demonstrate that it acted pursuant to a federal officer's direction and a causal nexus exists between Plaintiff's claims and Foster's actions.

Foster's removal argument is grounded in Foster's claim that the Federal Government directed it in specifications for design and manufacture of boilers, along with warning labels Foster could place on boilers that might have been relevant in preventing Plaintiff's injury.[237] However, Plaintiff disputes that he ever came into contact with asbestos aboard a government vessel.[238] Plaintiff stated in his deposition that he "only worked a short time on those government ships," and that he worked with fiberglass and cloth that did not contain asbestos.[239] Further, Plaintiff stated that he did not work in the engine rooms of government vessels because he was a new employee that "was just learning" and was not yet fully trained.[240] If Plaintiff did not work in the

---

[235] *See* Rec. Doc. 12.

[236] 28 U.S.C. § 1442(a)(1); *Winters*, 149 F.3d at 397; *Savoie*, 817 F.3d at 460; *St. Bernard Port, Harbor & Terminal Dist.*, 809 F. Supp. 2d at 529; *see also Blouin v. Huntington Ingalls Inc.*, No. 17-2636, 2017 WL 2628103, at *5 (E.D. La. June 19, 2017) (Zainey, J.).

[237] Rec. Doc. 12 at 8–12.

[238] *See* Rec. Doc. 4-23 at 3–4.

[239] *Id.*

[240] *Id.* at 4.

engine room of a government vessel, he would not have come into contact with asbestos from a Foster boiler, located in the engine room.[241] Foster relies on the affidavit of Mr. Rome, which it calls a "game changer," to prove that Plaintiff came into contact with asbestos from one of Foster's boilers aboard a government vessel.[242] However, Mr. Rome's affidavit presents no personal knowledge regarding Plaintiff's work aboard a government vessel, the existence of a Foster boiler aboard a specific vessel, or Plaintiff's alleged exposure to asbestos aboard a government vessel.[243] The subsequent affidavit from Mr. Rome and his deposition further demonstrate that he lacked knowledge that Plaintiff specifically was exposed to asbestos aboard a government vessel.[244] Plaintiff's testimony contradicts Foster's assertions that Plaintiff was exposed to asbestos by one of Foster's boilers aboard a government vessel, and Foster fails to provide relevant contradictory evidence. As found *supra* regarding Avondale Interests, if Plaintiff never came into contact with asbestos aboard a government vessel, then no federal interest is implicated, and no federal jurisdiction exists.[245]

The conclusion that removal was improper is further supported by the long line of Fifth Circuit cases cited *supra*, including *Bartel*, *Savoie*, *Legendre*, *Templet,* and *Melancon*, which hold that removal is appropriate for strict liability claims, but not for negligence claims. Specifically, this case is distinguishable from *Zeringue*, where the court ultimately concluded that removal was proper because the manufacturer-defendant had shown that it was ordered by the Navy to provide

---

[241] *Id.* at 3–4

[242] Rec. Doc. 12 at 6.

[243] *See* Rec. Doc. 1-3 at 1–2.

[244] *See* Rec. Docs. 74-4, 80-1.

[245] *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Federal jurisdiction rests on a 'federal interest in the matter,' the very basic interest in the enforcement of federal law through federal officials.") (internal citations omitted).

the asbestos-containing parts on which the plaintiff's strict liability claims were premised.[246] Here, Plaintiff does not assert a claim against Foster based on exposure to asbestos aboard a federal vessel.[247] Specifically, Plaintiff stated in the petition that "with regard to Foster Wheeler boilers, plaintiff alleges that Mr. Dempster was exposed to asbestos from Foster Wheeler boilers on commercial vessels only."[248] Further, Plaintiff stated that "Petitioner's causes of action are based upon the acts and omissions of defendants or those for whom the defendants are responsible, and are specifically not based upon any act committed by the United States Government or at the direction of the United States Government."[249] While Plaintiff does bring strict liability claims against Foster, those claims are only in relation to his work on commercial vessels.[250] Plaintiff does not bring strict liability claims against Foster on a government vessel, because he alleges he was not exposed to asbestos aboard a government vessel.[251] Therefore, *Zeringue*, in which the Plaintiff brought strict liability claims against the product manufacturer tied to the plaintiff's work on a government vessel, is distinguishable.[252]

Finally, Foster argues that cross-claims, brought by Avondale Interests against Foster, can serve as an alternative basis for Removal.[253] Foster specifically claims that "it is clear that the causal nexus test is satisfied if either Plaintiff or Removing Defendants' claims arise from the use

---

[246] *Zeringue*, 846 F.3d at 788, 794.

[247] Rec. Doc. 35 at 6.

[248] Rec. Doc. 4-5 at 29–30.

[249] *Id.* at 31.

[250] *See id.* at 29–30.

[251] *See* Rec. Doc. 4-23 at 3–4.

[252] *See Zeringue*, 846 F.3d at 788, 794.

[253] Rec. Doc. 12 at 19.

of asbestos in a product that the defendant designed and manufactured upon the government's request, particularly if (as here) the government contracted for the product's supply despite knowledge of its potential hazard."[254] However, Avondale Interests has not included any additional claims in its cross-claims against Foster, rather, as Plaintiff points out, Avondale Interests "merely adopted plaintiff's allegations."[255] Therefore, if removal is not proper on the basis of Plaintiff's claims against Avondale Interests, it is also not proper on the basis of Avondale Interests' claims against Foster, which adopt the same allegations and basis for fault.

Based on Foster's failure to prove Plaintiff's exposure to asbestos by a Foster boiler aboard a government vessel, Plaintiff's carefully worded petition, and clear Fifth Circuit precedent, the Court finds that Foster's removal pursuant to 28 U.S.C. § 1442(a)(1) was improper.

## V. Conclusion

In short, Avondale Interests and Foster have identified no evidence nor any plausible reason to distinguish this matter from the clear Fifth Circuit holdings in *Bartel*, *Savoie*, *Legendre*, *Templet*, and *Melancon*, or the recent conclusions of several district courts that rejected the same arguments put forth by Avondale Interests and Foster here.[256] Allowing removal of Plaintiff's negligence claims, without proof of exposure aboard a government vessel, would not serve the basic purpose of Section 1442, *i.e.* "to protect the Federal Government from . . . interference with

---

[254] *Id.*

[255] *See* Rec. Doc. 27-6 at 3; Rec. Doc. 27-7 at 2–3.

[256] *See, e.g.*, *Blouin*, No. 17-2636, 2017 WL 2628103, at *6 (rejecting Avondale's argument that it could remove claims for failure to warn and failure to implement safety measures under the 2011 amendments to Section 1442); *Legendre v. Huntington Ingalls Inc.*, No. 17-2162, 2017 WL 1458209, at *5 (E.D. La. Apr. 25, 2017) (Africk, J.) (finding that Avondale failed to establish a causal nexus with the plaintiff's negligence claims challenging Avondale's discretionary decisions); *Wilde v. Huntington Ingalls Inc.*, No. 15-1486, 2015 WL 2452350, at *6 (E.D. La. May 21, 2015) (Fallon, J.) (determining that there was no evidence that the government restricted Avondale's ability to warn of the asbestos dangers, and therefore there was no jurisdiction over the plaintiff's failure to warn claims).

its 'operations.'"[257] Because Avondale Interests and Foster have not shown that the necessary causal nexus between their actions under color of federal office and Plaintiff's claims exists, the Court finds that removal pursuant to 28 U.S.C. § 1442(a)(1) was improper. Accordingly, the Court concludes that the above-captioned matter must be remanded for lack of subject matter jurisdiction,[258] and therefore grants the Motion to Remand.[259] Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion to Remand"[260] is **GRANTED** and that the case is remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

**NEW ORLEANS, LOUISIANA,** this _____7th_____ day of January, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[257] *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 142 (2007).

[258] *See Savoie*, 817 F.3d at 462; *Bartel*, 805 F.3d at 172.

[259] Rec. Doc. 4. Additionally, because the Court finds that Defendants have not satisfied the causal nexus requirement for removal under Section 1442(a)(1), the Court need not address Plaintiff's other arguments, including those related to the timeliness of the removal or colorable federal defenses.

[260] *Id.*